# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

BARBARA MARQUEZ,

    Plaintiff,

v.

ALBUQUERQUE PUBLIC SCHOOLS
and ALBUQUERQUE SCHOOL
BOARD,

    Defendant.

No. 1:18-cv-00133-PJK-SCY

# MEMORANDUM OPINION AND ORDER
# GRANTING PARTIAL SUMMARY JUDGMENT

This employment discrimination case is before the court on the Defendants'[1] Motion for Summary Judgment as to all of Plaintiff's Claims filed May 30, 2019 (ECF No. 77).[2] Upon consideration thereof, the motion is well taken in part and should be granted in part as to the following claims: federal and state age discrimination, retaliation, hostile work environment, and punitive damages. The motion should be denied in part as to the sex discrimination claim.

---

[1] The court is informed that the proper defendant is Defendant Board of Education for the Albuquerque Public Schools.

[2] This case was reassigned to the undersigned on March 3, 2020.

**Background**

**A. Current Complaint**

Plaintiff Barbara Marquez sued the Board of Education for the Albuquerque Public Schools (APS), alleging sex discrimination (Count I), age discrimination (Count II), retaliation based upon prior complaints (Count III), and a hostile work environment based on the above (Count IV). Complaint, ECF No. 1 Ex. A at 9–11. She seeks punitive damages (Count V), compensatory damages, interest, costs, and attorney's fees. Id. at 11. She relies upon Title VII of the Civil Rights Act of 1964 (Title VII), the Age Discrimination in Employment Act (ADEA) and the New Mexico Human Rights Act (NMHRA), N.M. Stat. Ann. §§ 28-1-1 to 28-1-14 (1978). Complaint, ECF No. 1 Ex. A at 6.

In July 2016, Ms. Marquez, then 49 years old, applied for the position of Athletic Trainer/Teacher at Volcano Vista High School (VVHS). Ms. Marquez has worked for APS since the 1990–1991 school year. ECF No. 6 at 2, ¶ 8. According to her resume, from 1990–1994, she was a physical education and sports medicine teacher, and head athletic trainer, at Sandia High School. ECF No. 77 Ex. D; ECF No. 84 Ex. K. From 1994–2007, she was the head athletic trainer at Rio Grande High School (RGHS). From 2004–present, she has held the position of physical education/weight training teacher at RGHS and assumed the role of chairperson for the physical education department beginning in 2010.

Ms. Marquez was interviewed for VVHS position by two individuals: Ben Brown, the athletic director, and Valerie Atencio, the principal of VVHS. Four candidates were

interviewed and Enrique Ochoa was selected. Ms. Marquez claims that APS discriminated and retaliated against her (for filing suit against APS and collecting settlements) by selecting Mr. Ochoa, a younger, allegedly unqualified, male. She maintains that her qualifications and experience far exceeded what was required for the position and that her gender and age was apparent to the those conducting the interview. She maintains that APS did not call any of her three references, or Mr. Ochoa's undergraduate institution. She contends that the interview was too short and APS destroyed the forms. For its part, APS contends that it selected Mr. Ochoa, a recent graduate from the University of New Mexico, because it believed he would be more collaborative than Ms. Marquez and a better fit for the VVHS community overall. Though the specifics are not clear, the parties dispute whether Ms. Marquez indicated during the interview that she might have scheduling conflicts and might not always be available after school and on weekends.

In September 2016, Ms. Marquez filed a charge of discrimination with the New Mexico Human Rights Commission (NMHRC) and EEOC alleging sex and age discrimination, and retaliation. ECF No. 77 Ex. E at 3. In August 2017, the New Mexico Human Rights Bureau issued a Determination of No Probable Cause finding the evidence insufficient to support Ms. Marquez's allegations and dismissing her complaint with prejudice. ECF No. 77 Ex. F at 2. A month later, the EEOC issued a Dismissal and Notice of Rights adopting the Determination of No Probable Cause and dismissing Ms. Marquez's Charge. ECF 77 Ex. G at 1. Ms. Marquez then filed her complaint in state

district court. (N.M. 2nd Jud. Dist. Ct. D-202-CV-2017-09173). APS removed the case to federal court and moved for summary judgment. ECF No. 1.

**B. Past Complaints**

Ms. Marquez filed a charge of discrimination against APS in 2004 and again in 2010. ECF No. 77, UDF ¶ 25. Her 2004 claim for disparate treatment was initially filed with the New Mexico Human Rights Commission (NMHRC) which found that she failed to prove sex discrimination by a preponderance of the evidence. ECF No. 77 Ex. B at 2. She then sued APS, the RGHS principal, and athletic director in state district court claiming sex discrimination, retaliation, and a hostile work environment. ECF No. 77 Ex. A (N.M. 2nd Jud. Dist. Ct. D-202-CV-200603584). The case was settled for $35,000 with no admission of liability. ECF No. 84 Ex. A at 1–2. She thereafter voluntarily resigned from her position as RGHS's athletic trainer for the 2007-2008 school year but stayed on as a physical education/weight training teacher. ECF No. 77 Ex. C at 2. Kellen Pino replaced Ms. Marquez as RGHS's athletic trainer. Id. at 3.

In 2010, the RGHS principal assigned all of the school's sports medicine classes to Mr. Pino for the 2010–2011 school year, meaning Ms. Marquez no longer taught sports medicine. Id. at 4–5, ¶ 10. She initially filed a grievance pursuant to the Negotiated Agreement between APS and the Albuquerque Teachers Federation, which proceeded to a hearing and was ultimately denied. Id. at 5–6, ¶ 13. Without appealing the grievance denial, Ms. Marquez then filed a Charge of Discrimination with the EEOC and the NMHRC claiming that she was replaced with a younger, less qualified male who was "on an Intern-license [sic]" and alleging age and sex discrimination. Id. at 10. After a two-

day formal hearing, the NMHRC ruled in APS's favor, finding that APS had a non-discriminatory reason for the reassignment, namely a desire to coordinate the sports medicine curriculum with the athletic training program. Id. at 7, ¶ 14. NMHRC dismissed the claims against APS, and Ms. Marquez failed to timely appeal. The EEOC subsequently adopted the NMHRC's findings and dismissed the EEOC charge. Ms. Marquez then filed suit in state district court, alleging sex discrimination, age discrimination, hostile work environment, and retaliation for her previous lawsuit. (N.M. 2nd Jud. Dist. Ct. D-202-CV-2013-0869). The case was removed to federal court, Marquez v. Albuquerque Pub. Schs., 1:13-cv-01180-RB-KBM (Dec. 13, 2013) (ECF No. 1), and eventually settled for a nominal amount ($3,500). ECF No. 84 Ex. B.

**Discussion**

Summary judgment is warranted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law" Fed. R. Civ. P. 56(a). However, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986) (emphasis in original). Rather, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Id. at 248.

This court views the facts in the light most favorable to the non-movant and draws all reasonable inferences from the record in the non-movant's favor. Young v. Dillon Cos., 468 F.3d 1243, 1249 (10th Cir. 2006). A movant has the responsibility of informing

5

the court of the basis of its motion and supporting it with facts that would be admissible or pointing out the lack of evidence to support an element on which the non-movant will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). When a party claims that a fact is genuinely disputed, "[t]he nonmoving party must be specific to satisfy its burden, either by 'citing to particular parts of materials in the record' or by showing that the moving party has relied on insufficient or inadmissible evidence." Ezell v. BNSF Ry. Co., 949 F.3d 1274, 1278 (10th Cir. 2020) (quoting Fed. R. Civ. P. 56(c)(1)(A)–(B)). Speculation and conjecture are inadequate, rather the non-movant must put forth significantly probative evidence that would require submission to a jury. Anderson, 477 U.S. at 249–52; Hasan v. AIG Prop. Cas. Co., 935 F.3d 1092, 1098 (10th Cir. 2019).

Essentially, the summary judgment rules require the non-movant to contest the movant's statements of undisputed facts (UDFs) with more than legal conclusions. Fed. R. Civ. P. 56(c)(1)(B), (c)(2). The local rules provide:

> The [non-movant's] Response must contain a concise statement of the material facts cited by the movant as to which the non-movant contends a genuine issue does exist. Each fact in dispute must be numbered, must refer with particularity to those portions of the record upon which the non-movant relies, and must state the number of the movant's fact that is disputed. All material facts set forth in the Memorandum will be deemed undisputed unless specifically controverted.

D.N.M. LR-Cv. 56.1(b). While the local rules do allow a movant to "set forth additional facts," there is no getting around responding to the movant's statement of facts, one by one. Id.

6

Applying this, Ms. Marquez did not controvert the movant's UDF No. 8, that neither the principal or the athletic director knew of Ms. Marquez's past complaints and lawsuits against APS when they selected Mr. Ochoa for the position. That fact is undisputed. Ms. Marquez then sought to dispute UDF Nos. 9–17 and 19–21 as follows:

> These paragraphs are simply vague and subjective. Moreover, the declaration by Valerie Atencio and Ben Brown are merely self-serving statements made after the fact with no documentary support for the decision. The reasons Defendant gives for the hiring of Enrique Ochoa were a pretext for age and sex discrimination.

ECF No. 84 at 3–4. That plainly is insufficient to contest the above facts which are supported by evidence; the court agrees with APS that these facts could be deemed undisputed. See Thomas v. Wichita Coca-Cola Bottling Co., 968 F.2d 1022, 1024 (1992) ("Thus, when a movant claims that there is no genuine issue for trial because a material fact is undisputed, the nonmovant must do more than refer to allegations of counsel contained in a brief to withstand summary judgment.").

Regarding Ms. Marquez's statement of UDFs, APS acknowledges in UDF No. 30, ECF No. 84 at 9, that is it disputed as to whether Ms. Marquez stated in the interview that she had no restrictions on the hours she worked. ECF No. 91 at 5.

**A. Framework for Sex and Age Discrimination Claims**

The burden shifting analysis for both sex and age discrimination claims proceeds as follows:

> The plaintiff in both ADEA and Title VII cases bears the initial burden of setting forth a prima facie case of discrimination. The elements of each closely parallel the other. In either case the plaintiff must show: 1) she is a member of the class protected

> by the statute; 2) she suffered an adverse employment action; 3) she was qualified for the position at issue; and 4) she was treated less favorably than others not in the protected class. Once the plaintiff establishes a prima facie case, the burden shifts to the defendant to articulate a legitimate nondiscriminatory reason for the action. If the defendant does so, the plaintiff must show the defendant's proffered reasons are pretextual.

Sanchez v. Denver Pub. Schs., 164 F.3d 527, 531 (10th Cir. 1998). Sex and age discrimination claims brought pursuant to the NMHRA are analyzed under this same framework, which was originally laid out by the Supreme Court in McDonnell Douglas v. Green, 411 U.S. 792 (1973). See Orr v. City of Albuquerque, 417 F.3d 1144, 1149 n.5 (10th Cir. 2005) ("Plaintiffs' burden under the NMHRA is identical to their burden under Title VII."); Cates v. Regents of N.M. Inst. Min. & Tech., 954 P.2d 65, 69–70 (N.M. 1998) (applying the McDonnell Douglas framework to age discrimination claims brought under the NMHRA).

In a sex discrimination case, the plaintiff has the burden of demonstrating that sex was a motivating factor. 42 U.S.C. § 2000e-2(m). In an age discrimination case, Plaintiff has the burden to establish that age is the "but for" cause of the adverse action. Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 177 (2009) (quoting Bridge v. Phoenix Indem. Co., 553 U.S. 639, 654 (2008)). Ms. Marquez has shown, as APS concedes, a prima facie case of both sex and age discrimination.

**1. Age Discrimination**

APS has articulated a legitimate, nondiscriminatory reason for the decision not to hire Ms. Marquez and she has failed to show the proffered reason is pretextual. She has

thus failed to establish that her age was the "but for" cause of APS's decision not to hire her.

Ms. Marquez was interviewed by VVHS's Principal Valerie Atencio and Athletic Director Ben Brown. Principal Atencio and Mr. Brown attested that one of the key criteria for the Athletic Trainer/Teach position was a willingness to work collaboratively with the school community. ECF No. 77 Ex. N at 2, 24:2–20, 80:7–22; Id., Ex. O at 87:3–14. Based on her interview with Ms. Marquez, Principal Atencio believed Ms. Marquez would do "things exclusively 'her way' and that was not going to interact with groups of people in a way that promoted and encouraged collaborative efforts." Id., Ex. H at 2, ¶ 15. Mr. Brown had a similar impression, stating that:

> While Ms. Marquez answered some of the interview questions well, she answered other questions in a manner that indicated she would run the program in a way that discouraged a collaborative process with others, including athletes and coaches. Her responses indicated that neither her athletic training nor teaching style was group-oriented or collaborative.

Id., Ex. I at 2, ¶ 14. By contrast, Principal Atencio and Mr. Brown stated that Mr. Ochoa's answers to the same interview questions indicated that he would be collaborative and enthusiastic. Id., Ex. H at 2, ¶ 17; Id. Ex. I at 3, ¶ 16.

Ms. Marquez claims that these reasons are mere pretext, a conclusion that she bases largely on a comparison of her resume with Mr. Ochoa's. "Pretext can be shown by such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act

9

for the asserted non-discriminatory reasons." Morgan v. Hilti, Inc., 108 F.3d 1319, 1323 (10th Cir. 1997) (quoting Olson v. Gen. Elec. Astrospace, 101 F.3d 947, 951–52 (3d Cir. 1996)). "The relevant inquiry . . . is not whether the employer's proffered reasons were wise, fair or correct, but whether it honestly believed those reasons and acted in good faith upon those beliefs." Lobato v. N.M. Env. Dept., 733 F.3d 1283, 1289 (10th Cir. 2013) (quoting Luster v. Vilsack, 667 F.3d 1089, 1094 (10th Cir. 2011)).

Ms. Marquez points out that her experience far exceeded Mr. Ochoa's; at the time of her application, Ms. Marquez had 26 years of teaching experience, 17 years of experience as a Head Athletic Trainer, experience teaching sports medicine and physical education, a master's degree in education, and a Level III New Mexico teaching certificate. ECF No. 84, Ex. K at 1–2. Notably, Ms. Marquez had not been an athletic trainer in the decade leading up to her application.[3] By contrast, Mr. Ochoa did not have any teaching experience. ECF No. 84, Ex. M at 1–2. He did, however, have a bachelor's degree in athletic training, was board certified in athletic training, had completed 700 clinical hours of athletic training with RGHS and 900 hours with the University of New Mexico's athletic program, and, between 2012 and 2016, had worked as an athletic trainer for several high school and professional sporting competitions. Id.

Evidence that the plaintiff was as qualified as, or more qualified than, a successful applicant is usually insufficient to prove pretext. See Sanchez v. Philip Morris Inc., 992

---

[3] Ms. Marquez claims that she continued to work as an athletic trainer during this time for non-APS events. ECF No. 84, Ex. C at 120:6-24, 121:2–23. However, she could not recall any of the details of the alleged events, including how she was compensated, as they were "a long time ago." Id. 121:11, 23.

10

F.2d 244, 248 (10th Cir. 1993). It is not this court's role to determine "whether an employer acted prudently or imprudently in its hiring decisions." Id. "Mere conjecture that the employer's explanation is a pretext for intentional discrimination is an insufficient basis for denial of summary judgment." Dewitt v. S.W. Bell Tel. Co., 845 F.3d 1299, 1307 (10th Cir. 2017) (quoting Branson v. Price River Coal Co., 853 F.2d 768, 772 (10th Cir. 1988)). Here, many of Ms. Marquez's other allegations of pretext are exactly that: conjecture. Notwithstanding her qualifications, these allegations do not require a trial on the age discrimination claim. On the one hand, she claims that she was far more qualified because of her years of experience. Yet on the other, she faults the decisionmakers because they must have known her age from her application materials and her interview. She faults the hiring process for failing to check her references or those that might be available for Mr. Ochoa from UNM; for not retaining the forms used in the interviews (notwithstanding other competent evidence of what happened); for the interview times being too short to determine whether a candidate was collaborative given the many questions, and so on. It is simply not this court's role to determine the prudence or efficacy of the hiring process.

Ms. Marquez repeatedly argues that APS's reliance on subjective criteria is inappropriate. She fails to provide relevant precedent supporting this point of law. Rather, the facts show that both the posted job description and the statements made by Principal Atencio and Mr. Brown, referenced above, indicated that an applicant's soft skills were critical considerations for the position. See ECF No. 84 Ex. G at 1–2 (minimum job expectations listed in the Athletic Trainer/Teacher position included

11

"[e]ffective communication skills, both verbal and written"; "[f]lexibility, organization, decision making and problem solving skills"; "[i]nterpersonal skills with diverse populations in-person and on the telephone"; and "[a]bility to maintain positive relationships with students, parents, community members, and staff"); ECF No. 77 Ex. H at 2, ¶ 17; ECF No. 77 Ex. I at 3 ¶ 16. According to Principal Atencio and Mr. Brown, Mr. Ochoa demonstrated strong interpersonal skills and a willingness to work collaboratively with other school community members in a way that Ms. Marquez did not. Moreover, Ms. Marquez's statements that she performed well in the interview, see ECF No. 87 Ex. C at 118:19–22, are not sufficient to overcome summary judgment. See Kelley v. Goodyear Tire & Rubber Co., 220 F.3d 1174, 1177–78 (10th Cir. 2000) ("[Plaintiff]'s opinion of the interview is simply irrelevant, '[i]t is the manager's perception of the employee's performance that is relevant, not plaintiff's subjective evaluation of his own relative performance.'" (quoting Furr v. Seagate Tech., Inc., 82 F.3d 980, 988 (10th Cir. 1996))). Employers can and do rely upon interviews to gauge interpersonal skills without such interviews constituting pretext.

Additionally, Mr. Ochoa was not entirely devoid of objective experience, as Ms. Marquez suggests. As discussed above, Mr. Ochoa received a bachelor's degree in athletic training, was board certified in athletic training, completed 700 clinical hours of athletic training with RGHS and 900 hours with the University of New Mexico's athletic program, and, between 2012 and 2016, worked as an athletic trainer for several high school and professional sporting competitions. The fact that Mr. Ochoa did not have his teaching certificate at the time he applied for the Athletic Trainer/Teacher position is of no

consequence because, under New Mexico law, unlicensed individuals may apply for teaching positions provided they receive, or apply for, their teaching certificate within the time statutorily permitted. N.M. Stat. Ann. § 22-10A-3(C). As Mr. Ochoa fulfilled this requirement, he met the job posting's minimum qualifications, and the fact that those selecting relied upon this path simply is not evidence of pretext.

Given the above, it is abundantly clear that Ms. Marquez cannot succeed given the "but for" causation necessary for her age discrimination claim. The court thus grants summary judgment in APS's favor on Ms. Marquez's age discrimination claim.

### 2. Sex Discrimination

Ms. Marquez contests the other legitimate, non-discriminatory reason relied upon by APS, namely restrictions on her availability. She maintains that she communicated no such restrictions and APS's account to the contrary is pretextual. Ordinarily a plaintiff must offer evidence that could overcome each of the employer's legitimate, discriminatory reasons and Ms. Marquez has not done so as to APS's assessment of her collaborative abilities. That said, however, in a sex discrimination claim, a plaintiff need only prove that sex was a motivating factor in the decision. In an abundance of caution, the court will deny summary judgment on the sex discrimination claim as it pertains to hiring given the apparent factual dispute as to her availability.

### B. Retaliation

Ms. Marquez next claims the decision not to hire her was retaliation for her previous lawsuits against APS. In a retaliation case, the plaintiff must prove that the

13

protected activity was the "but for" cause of the adverse action. Univ. of Tex. Sw. Med. Ctr. v. Nassar, 570 U.S. 338, 352 (2013).

"A plaintiff claiming unlawful retaliation for asserting a Title VII or ADEA claim also bears the initial burden of establishing a prima facie case." Sanchez, 164 F.3d at 533. "To do so she must show: 1) she was engaged in opposition to Title VII or ADEA discrimination; 2) she was subjected to adverse employment action; and 3) a causal connection existed between the protected activity and the adverse employment action." Id.

Ms. Marquez satisfies the first two elements of this inquiry as she (1) has demonstrated that on two previous occasions she sued APS for discrimination, and (2) was not hired for the VVHS position. She ultimately fails to make a prima facie showing of retaliation, however, because nothing supports a causal connection between her protected activities and the adverse employment action. To establish a causal connection, a plaintiff must show temporal proximity between the protected and the adverse actions. Candelaria v. EG & G Energy Measurements, Inc., 33 F.3d 1259, 1261–62 (10th Cir. 1994). Here, where six years passed between Ms. Marquez's last discrimination lawsuit against APS and her application to VVHS, no such showing can be made. See id. at 1262 (three years between protected and adverse action did not satisfy temporal proximity requirement); Burrs v. United Tel. Co. of Kan., Inc., 683 F.2d 339, 343 (10th Cir. 1982) (same). Moreover, it is undisputed that those making the hiring decision were unaware of her prior claims against APS.

14

Ms. Marquez argues that this court should find a causal connection under the continuing violation doctrine. However, this doctrine does not apply to discrete acts of alleged discrimination. Martinez v. Potter, 347 F.3d 1208, 1210–11 (10th Cir. 2003). Ms. Marquez's prior lawsuits were based on discrete actions related to RGHS's failure to give her the class schedules she wanted. Moreover, APS's decision not to hire Ms. Marquez for the two other positions to which she applied during her 29-year tenure with APS does not amount to a continuing violation, as she alleges, because these decisions were each discrete acts. As such, summary judgment in favor of APS on the retaliation claims is warranted.

**C. Hostile Environment**

Ms. Marquez next brings a hostile work environment claim based upon APS's decision to not hire her on three separate occasions during her 29-year tenure. APS argues that Ms. Marquez's failure to bring this claim before the EEOC deprives this court of jurisdiction. However, failure to exhaust administrative remedies is not a jurisdictional question in this circuit. Lincoln v. BNSF Ry. Co., 900 F.3d 1166, 1185–86 (10th Cir. 2018).

Regardless, the claim cannot succeed. Throughout her 29-year career with APS, Ms. Marquez has applied to, and been rejected from, three positions, including the VVHS Athletic Trainer/Teacher position at issue here. "An employer creates a hostile work environment when 'the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" Hall v. U.S. Dep't of Labor,

Admin. Review Bd., 476 F.3d 847, 851 (10th Cir. 2007) (quoting Davis v. U.S. Postal Serv., 142 F.3d 1334, 1371 (10th Cir. 1998)). The "objectionable environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." Faragher v. City of Boca Raton, 524 U.S. 775, 787 (1998). In considering "whether an environment is sufficiently hostile or abusive [courts must] 'look[] at all the circumstances,' including the 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" Id. at 787–88 (quoting Harris v. Forklift Sys., Inc, 510 U.S. 17, 23 (1993)). Objectively, APS's decision not to hire Ms. Marquez on three separate occasions over a 29-year period is by no means hostile or abusive as the decisions not to hire her were not frequent, severe, or physically threatening or intimidating.

**D. Punitive Damages**

Ms. Marquez concedes punitive damages are not available under the statutory frameworks at issue. Summary judgment is thus granted in APS's favor on this claim.

NOW, THEREFORE, IT IS ORDERED that Defendant APS's Motion for Summary Judgment as to All of Plaintiff's Claims (ECF No. 77) filed July 12, 2019, is granted in part as to her federal and state age discrimination, retaliation, hostile work environment, and punitive damages claims and denied in part as to her sex discrimination claim.

DATED this <u>8th</u> day of April 2020 at Santa Fe, New Mexico.

<u>/s/ Paul Kelly, Jr.</u>  
United States Circuit Judge  
Sitting by Designation

Counsel:

Richard R. Marquez, Albuquerque, New Mexico, for Plaintiff.

Mia K. Lardy and Nathan T. Nieman, Modrall, Sperling, Roehl, Harris & Sisk, P.A., Albuquerque, New Mexico, for Defendant Board of Education for the Albuquerque Public Schools.